## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**CATHY J. JONES**                                                               **PLAINTIFF**

**v.**                          **CASE NO. 3:12CV00024 BSM**

**THE BOARD OF TRUSTEES OF**
**ARKANSAS STATE UNIVERSITY**                                    **DEFENDANT**

<u>**ORDER**</u>

The motion for summary judgment of defendant The Board of Trustees of Arkansas

State University ("ASU") [Doc. No. 29] is granted on plaintiff Cathy J. Jones's 42 U.S.C.

§ 1983 claims and denied as to all remaining claims.

I. FACTUAL BACKGROUND

Viewing the record in the light most favorable to plaintiff Cathy Jones, the non-

moving party, the facts are as follows.  On November 8, 2009, Jones, a black female, began

working in the Cooper Alumni Center at ASU as an administrative assistant and gift

processor.  Her supervisor, Holly Van Waggoner, treated her poorly from the very beginning

of her employment.  Waggoner allowed other employees to take breaks but refused to allow

Jones to do so.  Waggoner repeatedly berated her in front of coworkers and placed her

fingers and hands in Jones's face multiple times each week.  When Jones attempted to speak

to Waggoner about work or improving their working relationship, Waggoner would walk

away and, on two occasions, shut her office door in Jones's face as Jones attempted to speak

with her.  Waggoner also refused to allow Jones to perform job duties that Jones would

normally perform as Waggoner's administrative assistant.  For instance, an administrative assistant would normally retrieve mail; however, Waggoner would not let Jones receive mail containing donor gifts without being accompanied by a white coworker.  Administrative assistants would normally answer the phone; however, Waggoner did not let Jones answer the phone because Jones spoke improperly.  Indeed, Waggoner had Jones's phone line disconnected.

In June of 2010, Jones complained to Waggoner's supervisor, Christian Murdoch, who laughed and said he would have Waggoner "back off."  Although Waggoner began allowing Jones to take her breaks, she continued to mistreat Jones.  In July, Jones contacted J.W. Mason, the human resources director, and told him she wanted to file a grievance based on Waggoner's treatment of her.  Mason told Jones that there was no need to file a grievance and that he would schedule a mediation, which he did.  During the mediation process, Jones informed human resources that she believed Waggoner's treatment of her was due to her race and she requested to be moved out of the building.  After the first mediation, Waggoner informed Jones's coworkers of her complaints.  Jones's coworkers then began harassing Jones by making comments about her "nappy hair" and her mouth, using derogatory language such as "yassa massa" in her presence, and walking by her desk on numerous occasions while imitating and ridiculing black people.  Although the situation remained unresolved after three or four mediation sessions, no more were scheduled and the situation in the alumni center worsened.

Jones then contacted Glen Jones, in the provost's office.  She met with him in

December of 2010 and told him about the ongoing harassment. She told him that despite her complaints to Murdoch and human resources, nothing had been resolved.

On April 4, 2011, Jones began working under the supervision of Jim Prock. When the harassment continued, she complained to Prock on multiple occasions and asked to transfer out of the building. In late July, she emailed Prock about the harassment, stating that she felt that it was an attempt to make her quit. She requested some time off, which was granted. When she returned to work on August 5, a monkey was placed near her work area and it remained for a number of days. On August 17, another monkey was placed in a doorway near her seat and it remained there for several days. Prock, who saw both monkeys, laughed. He also made derogatory comments to her about black people and compared her to "black women in [a] black church." Prock also drew a series of pictures that included symbols affiliated with white supremacy and the Ku Klux Klan.

On September 7, 2011, following Jones's complaints about not being allowed to answer phones because of her speech and that job duties were taken away from her, Prock told her to clean his bookshelves. Jones, who stated that she had two degrees and that housekeeping could clean, said she would. As she began cleaning, Prock pushed her shoulders and told her not to clean the shelves. Jones was frightened and became physically ill. On September 21, Prock took Jones to human resources where she was given a counseling statement disciplining her for yelling at Prock. She requested and was given permission to take the document for a few days so she could read it before signing. On September 22, ASU terminated her employment, stating that her failure to sign was

3

insubordination.  On December 22, 2011, Jones filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.

Jones filed suit on January 27, 2012, and filed her amended complaint on April 4, 2012.  She brings claims for hostile work environment, race discrimination, and retaliation in violation of Section 1983 and Title VII.  Defendant moves for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is proper if, after the evidence is viewed and all reasonable inferences are drawn in the light most favorable to the nonmoving party, no genuine issue of material fact exists.  *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008); Fed. R. Civ. P. 56.  In seeking summary judgment, a party bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must, by affidavits or as otherwise provided for in Rule 56, set forth specific facts showing that there is a genuine issue for trial and may not rest upon the mere allegations or denials of his pleadings.  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 587 (1986).

If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party bears the burden of proof at trial, the entry of summary judgment against the nonmoving party is mandated by Rule 56(c).

4

*Celotex Corp.*, 477 U.S. at 322.  In considering a motion for summary judgment, however, all reasonable inferences are to be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  The evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

ASU's motion for summary judgment is granted on Jones's claims under 42 U.S.C. § 1983 and it is denied as to her remaining claims.

A.    42 U.S.C. § 1983 Claims

Jones has conceded her section 1983 claims and summary judgment is granted.

B.    Hostile Work Environment Claim

Summary judgment is denied on Jones's Title VII hostile work environment claims. ASU first argues that Jones's hostile work environment claims for conduct that occurred while she worked under Waggoner's supervision are barred by the statute of limitations.  In support, ASU points out that her EEOC charge was filed on December 22, 2011, and argues that acts occurring before June 25, 2011, are untimely.  This argument fails because hostile work environment claims differ from discrete acts of discrimination or retaliation as their very nature involves repeated conduct. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered for purposes of determining liability. *Id*. at 115-21.  The record shows that the hostile work environment that began under Waggoner's supervision continued until Jones's termination

on September 22, 2011.  Accordingly, Jones's hostile work environment claims based on conduct that occurred under Waggoner's supervision are not barred by the statute of limitations.

To sustain her hostile work environment claim based on conduct by coworkers or supervisors, Jones must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was due to her membership in the protected class; and (4) the harassment affected a term, condition, or privilege of her employment. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010).  A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194 (8th Cir. 2006).

For claims of harassment caused by coworkers, Jones must also show that her employer knew or should have known of the harassment and failed to take action.  *Id.* at 1195.  For conduct by supervisors, ASU is vicariously liable unless it can assert the Ellerth-Faragher affirmative defense by establishing: (a) that it exercised reasonable care to prevent and correct promptly any harassing behavior and; (b) that Jones unreasonable failed to take advantage of any preventative or corrective opportunities provided or to avoid harm otherwise. *Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004).  The affirmative defense is not available when a plaintiff suffers a tangible employment action.  *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

ASU asserts that summary judgment is proper because the incidents cited by Jones were not racially based and occurred too infrequently to constitute harassment. The problem with ASU's argument is that the record, viewed in the light most favorable to Jones, demonstrates that she was subjected to almost daily intimidation, ridicule and insult by both supervisors and coworkers. From the beginning of her employment, Waggoner repeatedly berated her and even altered her job duties to prevent her from answering the phone because of her speech. Her coworkers directed derogatory race-based language and ridicule at her on numerous occasions by describing her hair as "nappy," ridiculing "black speech and behavior" in her presence, and using insulting language such as "yassa massa." Prock also directed derogatory race-based commentary at Jones and drew a series of pictures that included symbols of white supremacy. On two occasions, monkeys were placed near her work space for days at a time. For these reasons, Jones has presented sufficient evidence from which a reasonable jury could find harassment sufficiently severe and pervasive to alter the conditions of her employment and to create an abusive working environment. *See, e.g., Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 911 (8th Cir. 2006).

ASU also asserts that there is no evidence that ASU knew or should have known about the harassment. The record, however, shows that Jones reported racially hostile conduct on multiple occasions and that ASU failed to take action. Accordingly, summary judgment is denied on Jones's hostile work environment claims.

C.   Race Discrimination Claim

Summary judgment is denied on Jones's Title VII race discrimination claim. Although

7

not entirely clear, her discrimination claim seems to be based on two things.  First, she states that she was subjected to disparate treatment during 2010 by Waggoner and, secondly, she states that her termination in 2011 was due to her race.  To the extent that she alleges disparate treatment based on Waggoner's treatment of her during 2010, those claims are barred by the statute of limitations because Jones stopped working for Waggoner on April 4, 2011, and her EEOC complaint was not filed until December 22, 2011.  *See* 42 U.S.C. 2000-5(e)(1) (establishing a 180-day statute of limitations for Title VII actions).

Because she has offered only circumstantial evidence that her termination was the result of discrimination, she must establish her prima facie case using the familiar *McDonnell Douglas* framework.  *See McDonnell Douglas v. Green*, 411 U.S 792 (1973).  She may do this by establishing that: (1) she is a member of a protected class; (2) she was meeting ASU's legitimate job expectations; (3) she was discharged; and (4) the discharge occurred under circumstances which give rise to an inference of unlawful discrimination.  *Johnson v. AT&T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005).  The burden then shifts to ASU to articulate a legitimate nondiscriminatory reason for terminating her and, after it does so, Jones must demonstrate by a preponderance of the evidence that the proffered reason is merely pretext for discrimination.  *Id.* at 760.  It is undisputed that Jones has established the first three elements of her prima facie case.  Jones has also established the fourth element because she was terminated by Prock soon after complaining about race-based harassment by him and coworkers.

ASU offers a legitimate nondiscriminatory reason by stating that Jones was terminated

because she failed to sign the employee counseling statement.  Jones states that this reason

is false because she was told that she could review the document before signing it.  There are

clearly factual issues in dispute regarding whether ASU's proffered reason is pretextual.

Accordingly, summary judgment is denied on Jones's discrimination claim.

D.    Retaliation Claim

Summary judgment is also denied as to Jones's Title VII retaliation claim.  ASU first

asserts that Jones's retaliation claim is untimely because it was not raised in her original *pro*

*se* complaint and her amended complaint was filed more than ninety days after the EEOC

issued its notice.

The problem with this argument is that it is "facts well pleaded, not the theory of

recovery or legal conclusions, that state a cause of action and put a party on notice."

*Maegdlin v. Int'l Assoc. of Machinists and Aerospace Workers*, 309 F.3d 1051, 1053 (8th

Cir. 2002).  Although Jones's original complaint does not specifically mention a retaliation

claim, she indicates that after she complained of harassment, she was mistreated and

subsequently terminated.  She also states that she was terminated for filing with the EEOC.

Although she did not file her EEOC charge until after her termination, these facts, coupled

with the liberal construction that *pro se* pleadings are to be given, indicate that ASU had

sufficient notice of Jones's retaliation claim.

To establish a prima facie case for Title VII retaliation, Jones must show: (1) that she

engaged in protected activity; (2) she suffered an adverse employment action; and (3) a

causal connection between the two exists.  *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877,

880 (8th Cir. 2005). If ASU then offers a legitimate, non-discriminatory reason for the adverse action, Jones must offer evidence that creates a question of fact as to whether the proffered reason was pretextual and creates a reasonable inference that ASU acted in retaliation. *Id.*

Here, Jones has established a prima facie case because she reported harassment and was subsequently terminated and, after viewing the facts in the light most favorable to Jones, a causal connection exists between the two events. This is true because on September 21, 2011, only two weeks after Prock instructed Jones to clean his bookshelves following her complaints about the hostile work environment and the fact that work was being taken away from her, Prock had her written up and she was terminated the next day. As discussed in section III.C above, ASU offers a nondiscriminatory reason for her termination by stating that she was fired simply because she failed to sign the counseling statement, and Jones asserts that she was told that she could review the document before signing. As a result, she has raised a question of material fact as to whether pretext exists and summary judgment is not appropriate. Accordingly, summary judgment is denied on Jones's Title VII retaliation claim.

## IV. CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment [Doc. No. 29] is granted in part and denied in part. It is granted as to Jones's Section 1983 claims and denied as to her remaining claims.

IT IS SO ORDERED this 28th day of June 2013.

_____
UNITED STATES DISTRICT JUDGE